WILLIAM S. McCORNICK, RESPONDENT, *v.* HENRY SADLER, APPELLANT.[1]

1. ASSIGNMENT OF CLAIM.—SUBSEQUENT PAYMENT BY DEBTOR.—JUSTIFICATION.—MECHANICS' LIENS.—BURDEN OF PROOF.—Where in an action by the assignee of the claim of a building contractor for the balance of the contract price of a building, defendant owner acknowledges that a certain sum was unpaid at the time of the notice to him of the assignment, but sets out as an affirmative defense in his answer that such sum has been paid to persons who furnished material for the building and who had a mechanics' lien therefor, the court instructed the jury that the burden of proof is on the defendant to establish the allegations of his affirmative defense in order to show that he was warranted in paying out such amounts. *Held, error.* Miner, J., *dissenting.*

2. ID.—HEARSAY TESTIMONY.—Where a building contractor's only knowledge as to the amount of lumber purchased from a firm, and which went into the construction of the building, was received from certain bills and drayage checks, and it appears that he did not know that the bills or checks—some of which had been lost—were correct, and was not present when all the lumber was delivered and did not measure it nor order all of it, his evidence as to such amount is hearsay. Miner, J., *dissenting.*

(No. 466. Decided June 29, 1894. 37 P. R. 334.)

[1] Rehearing granted July 27, 1894.

APPEAL from the District Court of the Third Judicial District, Hon. Geo. W. Bartch, *Judge.*

Action by William S. McCornick against Henry Sadler on an assignment of the balance of a contract price for a building. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Mr. Charles Baldwin* and *Messrs. Sutherland & Howatt,* for appellant.

*Mr. C. S. Varian,* for respondent.

SMITH, J.:

This action is to recover the sum of $2,325.26, alleged to be due plaintiff from the defendant upon a certain assigned account, which was assigned to plaintiff by Taft & Kropfganz. The money was due Taft & Kropfganz as balance on the contract price of building a house for defendant. After the assignment was made, defendant agreed with plaintiff that he would pay plaintiff any balance that might be due the contractors, after paying all subcontractors and material men who had or might obtain liens on the house. There was a balance at the time due the contractors, of $2,320.80, subject to the claims of subcontractors and material men. A few days afterwards, defendant paid to certain parties, claiming to be subcontractors and material men, this entire sum, leaving nothing for plaintiff. Among others, defendant paid to Mason & Co. $1,844, claimed to be due for lumber used in the construction of the house. He also paid Irwin & Buse $100, claimed for material. The whole controversy arises as to these two payments. The plaintiff claims that they were not claims for which liens could legally be obtained against defendant's house.

On behalf of the plaintiff, John O. Taft, one of the

original contractors, was introduced, and produced certain bills and drayage checks, and testified that only $1,546.60 worth of lumber was obtained from Mason & Co., and that $1,116.60 of this amount had been paid, leaving only $430 due, that might become a lien on the house. Having stated that he knew these matters of his own knowledge, he was asked on cross-examination as follows: "Q. How do you know? A. From the computation of the bills. Q. From the information you got from those bills? A. Yes, sir; and the checks that were delivered with the lumber. Q. Is that the only way? A. That is enough. Q. I ask if that is the only way. A. That is the only way." The defendant's counsel then moved the court to strike out the testimony of the witness, as to the amount of lumber received from Mason & Co. This motion was overruled, and defendant excepted. On further cross-examination of this witness, it appeared that he had measured none of the lumber; that he might have been present when some of it was delivered; that neither he nor his partner was present when portions of it were delivered; that some of the bills were lost. The witness again stated that his testimony was based on the bills and checks, and defendant's counsel again moved that his testimony be stricken out. The motion was overruled, and defendant excepted.

These rulings present the first question for our consideration. It will be seen that this testimony was received to show that no more than $1,546.60 worth of lumber from Mason & Co. was used in building the house of defendant, and this was the only testimony of plaintiff on that point. It will be observed that the witness did not profess to have any personal knowledge as to how much lumber was received from Mason & Co.; that practically his entire knowledge was derived from certain invoices and drayage checks. He does not pretend to know who made

out the bills or checks. Much less does he pretend to know or say that they are correct. If the bills were competent to prove that the articles described in them went into the house, and that none others were used, then the bills should have been introduced. If they were not competent in themselves, then we are at a loss to know how a witness could know, and testify from a computation of the bills as to, the exact amount of lumber that was used in the house. The witness had ordered some lumber, but only a part of it. He had been present when only a small part was delivered. It is perfectly plain that his entire testimony on this subject was purely hearsay. This was the principal issue in the case, and this testimony was the only evidence offered by plaintiff.

On behalf of defendant, two witnesses, Carroll and Kern, the architects in charge of the erection of defendant's house, testify that the lumber and material obtained from Mason & Co., and used in the house, was worth from $2,700 to $3,000. The jury returned a verdict for plaintiff for $1,513.70. In view of the verdict and the state of the proof, we must hold that the ruling of the court in refusing to strike out the testimony of Taft was an error that necessitates a reversal of judgment.

One other matter is presented that we think proper to notice in this opinion. The court charged the jury, on its own motion, as follows: "The court charges you that in this case the burden is upon the plaintiff to prove the assignment, and notice thereof to the defendant, substantially as alleged in the complaint, by a preponderance of the evidence; and, if you find from the evidence that the plaintiff has so proved the assignment and notice, then you must further find from the evidence, before the plaintiff is entitled to recover, that the claims which the defendant paid after such notice from plaintiff were claims which were not liens against the house in question, and

for which the claimants were not entitled to liens on said house. If you find for the plaintiff on both these points, then he is entitled to recover such sum as, from all the evidence, you find the defendant has wrongfully paid out on the assigned claim of Taft & Kropfganz."

The court further charged the jury, at the request of plaintiff, as follows: "The answer of the defendant admits the sum of $2,320.80 to have been due from the defendant to Taft & Kropfganz on January 10, 1891, and alleges that defendant paid out the fund in controversy to certain firms for materials furnished, and for which defendant's house was, or could have been, charged with liens under the mechanic's lien law, as follows: To Mason & Co., $1,844; to Irwin & Buse, $100; to Spencer, Bywater & Co., $71; and to Culmer & Bro., $305.80. The plaintiff concedes the fact and legality of the payments to Spencer, Bywater & Co. and Culmer Bros. You are instructed that if it shall be established by a preponderance of the evidence that the assignment, as claimed by the plaintiff in the complaint, was made, and notice thereof was given to defendant, the burden is cast upon the defendant to prove by a preponderance of the evidence that payments made to Mason & Co. and to Irwin & Buse were for materials or labor furnished in the building of the defendant's house, and for which liens could have been filed; that is to say, that the times for such filings had not expired. In ascertaining the amounts of such claims, the defendant, after notice of McCornick's claim, was bound to be diligent and cautious; and no agreement or consent of either Taft or Kropfganz to payments made can justify defendant, or relieve him from liability, if in fact he paid claims for which his house was not liable, unless he used proper care and diligence to ascertain the fact, and by competent evidence, and paid in good faith, or unless plaintiff consented to such payment."

We think these two charges are somewhat in conflict, and left the jury in doubt as to whether the burden was on the plaintiff or defendant to show that the claim of Mason & Co.' was or was not a claim that might be a lien on defendant's house. In other words the jury must have been in doubt as to whose duty it was to show the amount of material obtained from Mason & Co. that was used in defendant's house. We are of opinion that the burden was on the plaintiff, and that the instruction given by the court on its own motion correctly stated the law.

It is due to the trial judge to say that the exceptions to the charge were not taken at the trial, but, by stipulation between the parties, were taken when the statement on motion for a new trial was made up. We do not approve this practice, but, if parties indulge in it, they must take the consequences. No doubt the charge would have been corrected if the attention of the trial judge had been called to the matter at the time. The judgment and order denying a new trial are reversed, and the cause remanded, with directions to grant a new trial; appellant to recover the costs of appeal.

MERRITT, C. J., concurs.


MINER, J. (*dissenting*):

I cannot• agree with my brothers in this case. The amended answer of the defendant sets up an affirmative defense, and the defendant offered evidence upon that defense. The plaintiff was therefore entitled to the instruction given,—that the burden was on the defendant to establish the allegations of his affirmative defense. The charge should be construed as a whole. The charge, as given, is not, in my opinion, contradictory, but properly covered the issues presented by the pleadings and proofs. *Hamer* v. *Bank;* 9 Utah, 215, 33 Pac. 941, and cases cited;

*People* v. *Hart*, 10 ante p. 204, 37 Pac. 330; *Smith* v. *Maben* (Minn.), 44 N. W. 792; *Smith* v. *Carr*, 16 Conn. 450; *U. S.* v. *Wright*, 1 McLean, 509; Fed. Cas. No. 16,775; *Ocheltree* v. *Carl*, 23 Iowa, 394. Neither should the testimony of Taft have been stricken out. The record shows that he was present when nearly all of the lumber was delivered and put into the house of defendant; was present at the settlement between Taft & Kropfganz, McCornick and Sadler. He had charge of the bills and accounts connected with the building of Sadler's house. The material was bought from Mason & Co. and put into the defendant's house and other houses. He testifies that he had gone over its bills of material furnished, and that they did not reach the amount claimed by Mason & Co. to be charged against Sadler's house; that he knew the amount to be charged to Sadler's house separate from other houses, and it reached $1,500; that $700 and other amounts were paid on the order.

The witness states the payments made by Sadler to Taft & Kropfganz, and that a balance was left unpaid, of $430, to Taft & Kropfganz; and these facts and figures were presented to Sadler at or about the time of the settlement between him and Taft & Kropfganz. He further states: That he knew of his own knowledge how much lumber was bought from Mason & Co. for Sadler's house. He knew from the bills and from the checks delivered with the lumber at Sadler's house when he was in charge. That he was there nearly every day, looking after the job, and the materials that were received. Checks were delivered to him with each load of material delivered,—that is, a delivery check came with each load,—and he was constantly looking after the material delivered for Sadler's house. He was a member of the company, with Taft & Kropfganz, and ordered this material for the firm for the defendant's house. The bill of lumber delivered he verified by the

delivery checks that came with the lumber.    Other testimony was given, showing that the witness was acquainted with the amount of lumber delivered from Mason & Co. to defendant Sadler, and that payments were made from time to time, and that he advised Sadler there was only $430 due on the Sadler house.    A motion was made to strike out this proof, which was denied, and defendant assigns error upon it.    I am of the opinion that the court would have been clearly in error had he struck out the testimony.    While it may have been contradictory in part, yet the credibility of the witness was for the jury.    It certainly cannot be contended that it is the duty of the court to strike out the testimony of every witness who may seemingly give contradictory testimony, yet these are the principal grounds upon which a reversal is ordered.    I think the court correctly refused to strike out Taft's testimony, and that the instructions given by the court were proper, under the pleadings and the proof given in the case.    The judgment of the court below should be affirmed.